**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CDS BUSINESS SERVICES, INC. *doing business as*
NEWTEK BUSINESS CREDIT,

|  |  |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -against- | CV 21-6506 (EK) (ARL) |

GEORGE R. SCHOEDINGER,

Defendant.
-----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

The plaintiff, CDS Business Services, Inc, doing business as Newtek Business Credit ("CDS"), commenced this action on November 22, 2021, against the defendant, George R. Schoedinger ("Schoedinger"), asserting a claim for breach of guaranty. On February 28, 2022, CDS moved for a default judgment. By order dated March 1, 2022, District Judge Komitee referred the motion to the undersigned to determine whether the motion should be granted and, if so, the appropriate amount of damages to be awarded. For the reasons set forth below, the undersigned respectfully recommends that the plaintiff's motion for a default judgment be granted and the plaintiff be awarded $971,593.30 plus pre-judgment interest at the annual rate of 13.25% for the period between November 1, 2021 and the date of entry of judgment. The undersigned also recommends that the plaintiff be awarded post judgment interest at the applicable statutory rate.

## BACKGROUND

### A.    Factual Background

The following facts are taken from the complaint, the plaintiff's motion for default judgment and the exhibits attached to that motion. CDS is a Delaware corporation with a principal place of business at 1981 Marcus Avenue, Suite 130, Lake Success, New York 11042.

Compl. ¶ 2.  Schoedinger is an individual who is domiciled at 6 Babler Lane, St. Louis, Missouri

63124.  *Id.* ¶ 3.  On or about June 21, 2019, CDS entered into an Accounts Receivable

Administration Agreement (the "AR Agreement") with LabPro Diagnostics, Inc. ("LabPro"),

pursuant to which CDS agreed to provide LabPro with a $1,500,000 line of credit secured by

LabPro's accounts receivable.  *Id.* ¶ 7, Ex. B.  Pursuant to the AR Agreement, LabPro agreed,

among other things, to the following terms:

> a.  For a renewable one-year term, LabPro agreed to sell and assign to [CDS] and [CDS] agreed to purchase (in all cases with full recourse to LabPro) LabPro's accounts receivable that were approved by [CDS];

> b.  LabPro could request, and [CDS] in its sole discretion could make, advance payments to LabPro in an amount up to 80% of such purchased accounts receivable, with the amount of advances outstanding at any time not to exceed $1,500,000;

> c.  Interest on LabPro's outstanding balance accrue[d] at the per annum rate of 5% above the Prime Rate, but not less than 5%, on a daily basis until all of LabPro's obligations [were] paid in full. If, however, LabPro [was] in default under the AR Agreement, interest [would] accrue[] at the per annum rate of 10% above the Prime Rate;

> d. If LabPro's rolling three-month average daily balance dropped below a minimum of $600,000, then LabPro was obligated to pay an under minimum fee consisting of interest on the difference between $600,000 and the rolling three-month average daily balance, plus a 0.6% fee;

> e.  LabPro agreed to pay a monthly collateral monitoring fee equal to 0.6% of the average outstanding balance for the prior thirty days;

> f.  LabPro agreed to pay a closing fee of $15,000 upon execution of the AR Agreement;

> g.  LabPro agreed to reimburse [CDS] for certain costs and expenses; and

> h. LabPro's failure to pay or failure to perform any of its obligations under the AR Agreement constitute[d] events of default under the AR Agreement.

*Id.* ¶ 9, Ex. B.

On the same day as the AR Agreement was executed, Schoedinger executed a Personal Guaranty in favor of CDS. *Id.* ¶ 10, Ex. A. Pursuant to the Personal Guaranty, Schoedinger unconditionally and irrevocably guaranteed to CDS all present and future obligations of LabPro under the AR Agreement. *Id.* ¶ 10. Between July 1, 2019 and October 31, 2019, LabPro borrowed $612,451.56 in principal from CDS and incurred the obligations to pay the interest and fees associated with that borrowing as set forth in the AR Agreement. *Id.* ¶ 12. The total amount of payments and credits that have been made to CDS by LabPro amounts to $16,948.47 and no payments at all have been made since September 2019. *Id.* ¶ 15.

Accordingly, CDC claims that LabPro has breached the AR Agreement by failing to pay the outstanding amounts due to CDS despite CDS' repeated demand for payments. *Id.* ¶¶ 14-16. Specifically, on November 29, 2020, CDS sent LabPro a Notice of Acceleration of All Obligations under Accounts Receivable Administration Agreement and Demand for Payment. Triant Decl. Exs. D, E. By that point $824,727.32 was allegedly due and owing to CDS. *Id.* Notwithstanding the demand, LabPro failed to pay the outstanding amounts due under the AR Agreement. *Id.* ¶ 17.

As a result, CDS now claims that as of November 1, 2021, Schoedinger was liable under the Personal Guaranty for the current amounts due to CDS under the AR Agreement, namely:

| | |
|---|---|
| Principal | $ 606,951.56 |
| Interest | $ 317,154.90 |
| Fees | $  47,486.84 |

Total Amount Due:  $ 971,593.30

*Id.* In addition, CDS claims that pursuant to the AR Agreement default interest is accruing at an annual rate of 13.25% (*i.e.,* 10% above the Prime Rate) and will do so through the date of entry of judgment. *Id.* ¶ 24.

### B.    Procedural Background

As indicated above, CDS filed the complaint in this action on November 22, 2021.  ECF No. 1.  On November 23, 2021, the Summons, Complaint with Exhibits, Civil Conference Sheet and Notice of Magistrate Judges Availability were personally served on Schoedinger at 6 Babler Lane, St. Louis, Missouri 63124.  ECF No. 3; Kirshnitz Decl. ¶ 5.  On January 18, 2022, CDS filed a request for a certificate of default with the Clerk of the Court.  ECF No. 6.  Two days later, the Clerk of the Court certified that Schoedinger had failed to answer or otherwise move with respect to the complaint.  ECF No. 7.  On February 28, 2022, CDS filed the instant motion for a default judgment.  ECF No. 8.  Despite being served with a copy of the motion, to date, Schoedinger has not opposed the motion for default judgment or responded in any way.

## DISCUSSION

### A.    Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a default judgment is made to the district court judge.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true").  However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default

4

judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

A default also "effectively constitutes an admission that the damages were proximately caused

by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon

which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v.

Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  Thus, the movant need only prove that the

"compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."

*Greyhound*, 973 F.2d at 159.

### B.      Breach of Guaranty

In order to establish a breach under the terms of a written guaranty in New York," a

plaintiff must establish 'the existence of a primary obligation under a contract or note, the

guarantee of such obligation by a guarantor and a default on the part of the obligor and the

guarantor.'" *CDS Bus. Servs., Inc. v. H.M.C., Inc.*, No. 19 CV 5759 SJF SIL, 2021 WL 4813185,

at *8 (E.D.N.Y. May 18, 2021), report and recommendation adopted, No. 19 CV 5759 JMA SIL,

2021 WL 4458884 (E.D.N.Y. Sept. 28, 2021) (citing *RMP Capital, Corp. v. Victor Jet LLC*, No.

12-6197, 2013 WL 1822727, at *7 (N.Y. Sup. Ct. Apr. 12, 2013).  As such, in order to prevail on

this motion, CDS must show (1) that LabPro defaulted on its debts to CDS; (2) that Schoedinger

guaranteed those debts and is, therefore, liable for the debts of LabPro; and (3) the amount owed

to CDS was not paid by either LabPro or Schoedinger.  *See Bank Leumi Tr. Co. of New York v.

Meagher*, No. 93 CIV. 7351 (KTD), 1994 WL 455106, at *1 (S.D.N.Y. Aug. 23, 1994).

Applying the above principles, the undersigned finds that CDS has submitted sufficient proof of

the AR Agreement, which contains LabPro's obligations to repay the advances paid by CDS as

well as interest and applicable fees.  Compl. Ex. B.  CDS has also submitted sufficient proof that

Schoedinger unconditionally and irrevocably guaranteed to CDS the prompt payment and

performance of Lab Pro's obligations under the AR Agreement.  *Id*. ¶ 10, Ex. A.  Moreover,

5

according to the Declaration submitted by Juliann Triant, Vice President and Senior Operations

Manager at CDS, as of November 21, 2021, the outstanding principal, interest (including

collateral monitoring fees) and fees due under the AR Agreement was $ 971,593.30.  Triant

Decl. ¶ 16.  Finally, pursuant to the AR Agreement, that amount accrues default interest at the

annual rate of 13.25% (i.e., 10% above the Prime Rate).  *Id*. ¶ 24.  Accordingly, the undersigned

respectfully recommends that CDS' motion for a default judgment be granted and that it be

awarded $971,593.30, with interest at the rate of 13.25% from November 1, 2021, through the

date of judgment.

### C.       Post Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "interest shall be allowed on any money judgment in a

civil case recovered in a district court. . ..  Such interest shall be calculated from the date of the

entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding."  28 U.S.C.A. § 1961 (West).  As such, the undersigned also recommends that

CDS be awarded post judgment interest from the date of judgment at the statutory rate.

### OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date

below.  Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the

defendant upon receipt and shall file proof of service with the Court.  Any objections to this

Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to

the undersigned within 14 days of service.  Failure to file objections within this period waives

the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72;

*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60

(2d Cir. 1996).

Dated:  Central Islip, New York
        June 7, 2022                        _____/s/_____
                                            ARLENE R. LINDSAY
                                            United States Magistrate Judge

7